# Reinboth *versus* The Zerbe Run Improvement Company.

The record of the acknowledgment of a treasurer's deed for unseated lands, kept in the Court of Common Pleas, when the deed itself is lost, is evidence of the existence of the deed.

After such evidence, together with the treasurer's sale book corresponding therewith, parol proof of the existence of the deed, its loss and diligent search for it without avail, it was not error to admit in evidence a deed from the alleged purchaser at treasurer's sale, reciting the treasurer's deed to him.

After a sale of land by the treasurer to a stranger, and the time for redemption has passed, one of two tenants in common may purchase it from the treasurer's vendee, and such purchase will not enure to the benefit of the other tenant in common.

And the same principle applies where the purchase is made by an attorney, and held in trust by him, if he were acting only as the agent of one of the tenants in common in the purchase.

A subsequent treasurer's sale, and a purchase of the land by the heir of one of the original tenants in common, where he purchased with his own funds and for himself, would not enure to the benefit of the other tenant in common whose title had been divested by the previous sale for taxes.

ERROR to the Common Pleas of *Northumberland county*.

This was an ejectment brought by Joseph D. Reinboth, executor of Jacob Von Neida, deceased, against The Zerbe Run and Shamokin Improvement Company, to recover the one undivided half of 150 acres of land. The plaintiff showed the title out of the Commonwealth, and in one Frederick Haas, who in 1811, conveyed it to Elisha Geiger. In 1817, Geiger acknowledged in writing the receipt for the purchase, and that he held the one-half in trust for the plaintiff's testator. This instrument was recorded in 1831, and upon it the plaintiff claimed to recover an undivided moiety of the land.

The defendants resisted such recovery, and showed that in June, 1824, the land having been previously charged with taxes, it was sold at treasurer's sale, to Edward Staples; who on the 31st of October, 1829, conveyed the same with other tracts, to Charles G. Donnel, Esq. The treasurer's deed to Staples, it was alleged, was lost; and the defendants proved by Hon. Charles Hegins, the administrator of Donnel, that he found the deed among Judge Donnel's papers—had been in his possession four or five years before the trial; and that he made diligent search for it without finding it. Charles Tower, Esq., who had procured papers from Judge Hegins in relation to defendants' lands, was also called and testified that this deed was not among them, and that he had never seen it. The defendants then offered in evidence the record of the acknowledgment of the treasurer's deed, in the Common Pleas of Northumberland county, on the 20th August, 1824.

[Reinboth *v*. The Zerbe Run Improvement Company.]

It was objected to by plaintiff's counsel, that the requisite search is not shown to have been made, and that the record is not competent evidence of the contents or existence of the deed. These objections were overruled, and at the instance of plaintiff's counsel a bill of exceptions was sealed. They then also offered to evidence the deed of Edward Staples, of 31st October, 1829, in Charles G. Donnel, recorded 15th December, 1830, for nine tracts, including the tract in dispute, and reciting the treasurer's sale of 1824.

The plaintiff's counsel objected to the reception in evidence of this deed, on the ground that no title had been shown in the grantor, Edward Staples. The court permitted the deed to be read, and at the instance of plaintiff's counsel, sealed a bill of exceptions.

The defendants further proved, that the land was assessed with taxes in the years 1837, 1838, and 1839, in the name of the warrantee, B. F. Young, and sold at treasurer's sale in 1840, to Christopher Geiger, who was the eldest son of Elisha Geiger, and who had become the owner by deed from Frederick Haas, in 1811. The defendants then traced the title by regular conveyances from Christopher Geiger to themselves.

The plaintiff, for the purpose of showing that the interest of his testator had not been divested by the treasurer's sale in 1824, traced the title from Benjamin F. Young, the warrantee, to a man by the name of John Myers, who on the 26th November, 1804, conveyed it to David Sholl, with various other tracts. In August, 1807, Myers released the mortgage to Scholl of the 150 acres in dispute. On this mortgage, an *alias scire facias* was issued to No. 29, January Term, 1830, by the administrator of Myers, against David Sholl. To this *alias scire facias*, Charles G. Donnel, who was an attorney and counsellor at law, appeared for the heirs of Elisha Geiger. The entry of the appearance on the docket was in Mr. Donnel's own handwriting. And the testimony of Christopher Geiger showed that he had at that time employed Mr. Donnel as the counsel for the heirs of his father. And on the treasurer's sale-book of 1840, it is entered that Donnel paid the purchase-money for Christopher Geiger. Elisha Geiger died in 1821, and Jacob Von Neida, who was married to Geiger's sister, died in 1855.

The plaintiff in the court below, presented the following points:—

" 1st. The defendants have shown no title in themselves from Charles G. Donnel.

" 2d. That an outstanding title to enure to the benefit of a defendant must be a valid and subsisting one, and not abandoned, derelict, or barred by the Statute of Limitations, or one which the party could not set up himself.

"3d. That Charles G. Donnel, if living, could not now set up the Staples title against the plaintiff, after having been the attorney and confidential agent of Christopher Geiger, his action in the case of Feger's Administrator v. Sholl, having had it expressly set apart to the heirs of Geiger in said case, and having purchased it at tax sale in 1840 for Christopher Geiger, and that therefore the defendant cannot set up Donnel's Staples title as outstanding to defeat the plaintiff's recovery of one-half of the land in this case.

"4th. That the purchase at tax sale in 1840, by C. Geiger, must, under the evidence in the case, be considered as made for the benefit of the parties jointly interested in the title to said land.

"5th. That by the deed of Haas and wife, under the evidence Elisha Geiger held the undivided moiety, or half part of the land in question, as trustee for Jacob Von Neida, and that upon the death of the said Elisha Geiger said trust estate descended to Christopher Geiger, his oldest son and heir at law, who could not purchase at treasurer's sale so as to defeat the title of his *cestui que trust*, Jacob Von Neida.

"6th. That the tax sale of 1840, if valid, discharged the Staples title."

The court below (Hon. W. J. WOODWARD, P. J., holding a special court) answered these points as follows:—

"1st. The defendants have shown no conveyance from Charles G. Donnel.

"2d. This point contains a correct statement of abstract principles, and, abstractly, is entitled to an affirmative answer. There is no doubt that to entitle a party to a benefit under a title he sets up, it should be a valid one.

"3d. The court can see no reason why Charles G. Donnel, if living, in a controversy between the present plaintiff and himself could not avail himself of the Staples title. Von Neida's original interest in this land stands upon very different grounds from those on which the interest of the Geiger heirs stands. After the first *scire facias* upon the Sholl mortgage was issued, and while Mr. Donnel was acting for the heirs, he procured the deed from Staples. The plaintiff insists that the evidence shows Donnel to have been acting as trustee for the heirs. The court entertain the same opinion. Donnel could not make his title available against the heirs. It is not pretended that he ever desired to do so; but he was not Von Neida's trustee. The estate of Von Neida was divested in 1826, after the lapse of two years, allowed for redemption. Mr. Donnel, according to the plaintiff's theory, became the trustee of the parties, for whom he purchased. There is no proof of an intention to reinstate Von Neida in his original rights. There is no presumption of any abandonment of the

Staples title. Its acquisition was cotemporaneous with the proceedings on the *scire facias.* As against all the world, except the party to whom he owed some legal duty or obligation, Mr. Donnel's title, while he was permitted to retain its possession, had the same effect it would have had if no such duty or obligation had been created.

" 4th. The purchase at the tax sale in 1840, is to be taken, under the evidence, to have been made for the benefit of Elisha Geiger's heirs. It was procured by Mr. Donnel. Christopher Geiger was acting for the heirs in 1829, and employed counsel for them, as the record of the *scire facias* and his own testimony, offered by the plaintiff, show. The purchase in 1840 cannot be held to have been made for the benefit of Von Neida.

" 5th. Elisha Geiger, at the time of his death, held the legal title to one-half of the land in dispute, under the constructive obligation to convey it to Von Neida when he should be required to do so. This was a naked trust which would descend by the English system to the heir at common law. It is not necessary under the view which the court have of this case, to inquire whether the rule governing formal and direct trusts, and which is supposed to be still in force in Pennsylvania, applies to a case like this, since the passage of the Act of 31st March, 1792 (3 *Smith's Laws* 66), ' to enable executors and administrators to convey lands contracted for with their decedents,' and the supplements to that act. Even if the rule were admitted to be in force, it would still have been competent for Christopher Geiger to acquire this land in 1840 by a tax sale to the exclusion of Von Neida. By the conveyance to Staples, the original title was divested. And at the second tax sale, though Christopher were to be regarded as holding the legal title as the heir at common law, he could still buy.

" 6th. The tax sale of 1840, was probably a measure of professonal precaution. Christopher Geiger testifies that it was procured without his knowledge. The proceeding was the act of Mr. Donnel. The securing of convenience in conveyancing and the closing of all questions relating to the payment of antecedent taxes, would be obvious motives for it. Christopher was acting for the heirs, and Mr. Donnel was the counsel employed by him. In the language of the point, however, ' if valid'—that is, if the land was purchased for the sole and exclusive benefit of Christopher, and irrespective of all previously subsisting obligations on his part—' it discharged the Staples title,' and took the place of every former estate and interest in the land.

" Upon the whole case, if the jury believe the testimony of Judge Hegins, the defendants are entitled to a verdict."

*Rockafeller* and *Miller*, for plaintiff in error.—One tenant in

[Reinboth *v.* The Zerbe Run Improvement Company.]

common cannot purchase an encumbrance or outstanding title, and set it up against his co-tenant: Smiley *v.* Dixon, 1 *Penn.* 440; Liggett *v.* Bechtel, *Id.*; Weaver *v.* Wible, 1 *Casey* 272. Before evidence can be given of the contents of a written paper, it is indispensable to prove, in the first place, the existence and execution of the original instrument: Porter *v.* Wilson, 1 *Harris* 645. There must have been recent, diligent, *bona fide* search. The secondary evidence must prove its contents, and thus supply the test paper. The bar of the statutes—the estoppel—the abandonment are questions for the jury: Myer's Appeal, 2 *Barr* 465; Parks *v.* Dunkle, 3 *W. & S.* 294; Laird *v.* Hiester, 12 *Harris* 463; Crum *v.* Burke, 1 *Casey* 377; Russel *v.* Werntz, 12 *Harris* 337; Burns *v.* Lyon, 4 *Wh.* 363; Dunden *v.* Snodgrass, 6 *Harris* 151; Diamond Coal Company *v.* Fisher, 7 *Harris* 267; Miller *v.* Hale, 2 *Casey* 437; Foust *v.* Ross, 1 *W. & S.* 506; Hunter *v.* Cochran, 3 *B.* 108; Thomas *v.* Wright, 9 *S. & R.* 92; Kessler *v.* McConachy, 1 *Rawle* 447; Bunting *v.* Young, 5 *W. & S.* 197.

*Comly* and *Donnel*, for defendant in error.

The opinion of the court was delivered by

ARMSTRONG, J.—Joseph D. Reinboth, executor of Jacob Von Neida, deceased, claimed title to the undivided half of a tract of land, in Zerbe township, warranted in the name of "B. F. Young," containing 150 acres. The regularity of the title from the Commonwealth to Von Neida seems not to have been contested. But the defendants allege that, that title has been divested by a treasurer's sale for taxes. And in support of this, offer the sheriff's deed-book, showing the acknowledgment by George Weiser, treasurer of Northumberland county, on the 20th of August, 1824, of a deed to Edward Staples for the land in question, sold on the 16th of June of the same year. The deed having been lost, this, in connexion with the testimony of Hon. Charles Hegins, was offered as additional evidence of the existence of the deed. It was admitted, and forms the first bill of exceptions. Almost every official paper or entry found in the commissioner's or prothonotary's office in relation to unseated lands, has been held as proper to go to a jury. Independent of the testimony of Judge Hegins, it would have been rightly received for what it was worth. And with his evidence, and for the purposes intended, it was correctly admitted.

The second error assigned, was the admission of the record of a deed from Staples to Donnel for nine tracts, including the land in question, and reciting a treasurer's sale of 1824. The objection was, that no title had been shown in Staples. It is true, the treasurer's deed to Staples had not been shown; but the treasurer's sale-book, showing the sale to Staples—the entry of acknowledg-

ment of the deed by the treasurer to him; the testimony of Judge
Hegins, who as administrator of Charles G. Donnel had charge
of his papers, proving the existence of the deed; its identity with
the land in controversy; its loss; and diligent search made for
it—sufficiently accounted for this missing link in the chain of
title, and fully justified the admission of the record offered.

The refusal of the court to charge as requested, in plaintiff's
1st, 3d, 4th, 5th, and 6th points, remains to be considered.   In
1811, Frederick Haas, being the owner of the land, conveyed it
to Elisha Geiger, who gave the plaintiff's testator a paper of the
following import:—

"Received April 1st. 1817 of Jacob Vionady the sum of twenty
five dollars Being in full for his half part of the last payment I
Paid to Frederick Haus for a tract of land in shamokin contain-
ing one hundred and fifty acres the Deid maid In Elisha Geiger
Nam But I do certify that one Equal half part of the above Tract
of land Belongs to said Jacob Vionady as whitness my hand this
day and date above Ritten."      (Signed,) "ELISHA GEIGER."

Jacob Von Neida, by his will, dated in 1835, appointed Joseph
D. Reinboth his executor, with power to sell his real estate.  Thus
stood the plaintiff's title until the 16th of June, 1824, when the
land was sold at treasurer's sale for the non-payment of taxes, to
Edward Staples, and two years were suffered to pass without any
redemption.  What now was the position of the parties ?  The
instrument of the 1st of April, 1817, clearly shows that, although
the deed was in the name of Elisha Geiger, the undivided half of
the tract belonged to Von Neida.  They were, therefore, at the
time of sale, tenants in common, and had either redeemed, or,
within two years, purchased the treasurer's title, it would have
enured to the benefit of both; but the time of redemption having
passed, the title of the former owner was gone, and the purchaser
(Staples) coming in as a stranger, there being no privity between
him and the former owners, his title was absolute.  And now,
either the heirs of Geiger or Von Neida, might have purchased of
Staples the entire title with perfect safety.  But they have not,
nor has the plaintiff, shown any other title that is available against
the defendants.  On the 31st of October, 1829, Edward Staples
conveyed this land to Charles G. Donnel; and plaintiffs contend
that, as Mr. Donnel appeared as attorney for the heirs of Elisha
Geiger to an *alias scire facias*, on mortgage, issued to November
Term, 1830, against David Sholl, who then owned this land; and,
as Christopher Geiger proves that he employed Mr. Donnel as
counsel for his father's estate, the purchase of Staples would enure
to the benefit of Elisha Geiger's heirs, and Donnel would be
estopped from asserting title in himself.  If this were admitted,
it could not benefit the plaintiff, who must show a good title in

himself, and *his* title was divested, beyond redemption, in 1826. The legal title, derived from Staples, was in Donnel; and, even if he held it in trust for Elisha Geiger's heirs, the plaintiff could gain nothing by setting up the title of the *cestui que trust*, as all privity between himself and the Geigers was severed by the treasurer's sale, after which, there being no redemption, the treasurer's deed, in whosesoever hand it might be, could be well set up against the plaintiff as an outstanding title.

Again, it is said that Elisha Geiger held the undivided half of the land in question as trustee for Von Neida; and that, upon the death of Geiger, the trust estate descended to Christopher (his oldest son and heir-at-law), who could not purchase at treasurer's sale so as to defeat the title of his *cestui que trust* Von Neida; and that the tax sale of 1840, if valid, discharged the staple title. If the land was unseated, and a tax duly assessed and unpaid, and of this no question was made on the trial, the tax sale of 1840 would certainly prevail over the Staple title of 1824, and it would as certainly prevail over the plaintiff's title which was lost by the sale in 1824.   There is no ground for saying that Christopher Geiger, by his purchase, through Charles Donnel, in 1840, held any interest in the land in trust for Von Neida; and how far he held in trust for the other heirs of his father, is a question with which the plaintiff has no concern.   Had he purchased at the sales of 1840, his right to do so could not be disputed by the heirs of Geiger.   They owed no duty to each other after their title became extinct by the treasurer's sale of 1824.   The tax sale of 1840 may have been unnecessary—it may have been on the part of Mr. Donnel, as the court below observed, "a measure of professional precaution," or the "securing of convenience in conveyancing."   It is unlike a sale by the sheriff, which conveys only the title of the defendant.   A tax sale extinguishes all previous titles; and, if Christian Geiger (whose interest in the land was afterwards conveyed to the Zerbe Run and Shamokin Improvement Company) had the slightest doubt of the sufficiency of the former title, he had a right to perfect it by a purchase at the sales of 1840, and by this, as well as the former sale, the plaintiff's title was gone.   There was, therefore, no error in the court saying that, "upon the whole case, if the jury believe the testimony of Judge Hegins, the defendants are entitled to a verdict."

Judgment affirmed.